In Re

**Linda M. Thake, aka**
**Linda M. Mays, aka**
**Linda M. Buechner,**
      Debtor.

**U.S. BANK TRUST NATIONAL**
**ASSOCIATION, AS TRUSTEE OF**
**BUNGALOW SERIES F TRUST,**
      Movant.

v.

**Linda M. Thake, aka**
**Linda M. Mays, aka**
**Linda M. Buechner,**
      Debtor,

and

**Diana S. Daugherty,** Trustee.
      Respondents.

**Case No. 15-47508-659**

**Chapter 13**

**MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY**

**MOTION WAIVES 30 DAY HEARING**

**Hearing Date: January 22, 2018**
**Hearing Time: 10:00 AM**
**Courtroom 7 North**

**Kozeny & McCubbin, LC**
**12400 Olive Blvd., Suite 555**
**St. Louis, MO 63141**
**edmo@km-law.com**

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## (REAL PROPERTY)

U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF

BUNGALOW SERIES F TRUST ("Movant") hereby moves this Court, pursuant to 11

U.S.C. § 362, for relief from the automatic stay with respect to certain real property of

the Debtor having an address of 4058 Humphrey St, Saint Louis, MO 63116 (the


*KM11682896KM*

"Property").  In further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on October 2, 2015.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334 and E.D.Mo. L.R. 81-9.01(B). This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper in this District under 28 U.S.C. Section 1409(a).

2.      A Chapter 13 Plan was confirmed on December 2, 2015.

3.      The Debtor, Linda Mays, has executed and delivered that certain promissory note in the original amount of $121,300.38 (the "Note").  A copy of the note is attached hereto as Exhibit 1. Movant is an entity entitled to enforce the Note.

4.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under the Note and Deed of Trust with respect to the Loan are secured by the Property.  A copy of the Deed of Trust is attached hereto as Exhibit 2.

5.      All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain Assignment of Deed of Trust.  A copy of the Assignment of Deed of Trust is attached hereto as Exhibit 3.

6.      The legal description of the Property is set forth in the Deed of Trust, a copy of which is attached hereto, and such description is incorporated and made a part hereof by reference.

7.      As of December 16, 2017, the outstanding Obligations are:


*KM11682896KM*

| | |
|---|---|
| Unpaid Principal Balance | $115,197.31 |
| Unpaid, Accrued Interest | $17,537.61 |
| Uncollected Late Charges | $1,127.43 |
| Mortgage Insurance Premiums | $0.00 |
| Taxes and Insurance Payments on behalf of Debtor(s) | $9,063.65 |
| Other Costs | $426.19 |
| **Less**: Partial Payments | ($1,231.84) |
| Minimum Outstanding Obligations | $142,120.35 |

8.　　In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $600.00 in legal fees and $181.00 in costs.  Movant reserves all rights to seek an award of allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and other applicable law.

9.　　The following chart sets forth the number and amount of postpetition payments due pursuant to the terms of the Note that have been missed by the Debtor as of December 16, 2017:

| Number of Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 7 | 02/01/2016 | 08/01/2016 | $810.40 | $5,672.80 |
| 9 | 09/01/2016 | 05/01/2017 | $813.18 | $7,318.62 |
| 7 | 06/01/2017 | 12/01/2017 | $786.21 | $5,503.47 |
| | | | Less postpetition partial payments: | ($132.09) |
| | | | Total: | $18,362.80 |

10.　　A postpetition payment history is attached hereto as Exhibit 4.

11.　　The fair market value of the Property is $75,000.00. The basis for such valuation is Schedule A of the Debtor`s Schedules.  A copy of Schedule A is attached



hereto as Exhibit 5.

12.     Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to the Movant, is $142,120.35.

13.     Cause exists for relief from the automatic stay for the following reasons:

(a)     Movant`s interest in the Property is not adequately protected.

(b)     Postconfirmation payments required by the confirmed plan have not been made to Movant.

(c)     Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property, and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

**WHEREFORE**, Movant prays that this court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.     That the Order be binding and effective despite any conversion of the bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.     That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.     For such other relief as the Court deems proper.



Respectfully submitted,

/s/Jonathon B. Burford
Jonathon B. Burford, #59337MO
Attorneys for Movant
12400 Olive Blvd., Suite 555
St. Louis, MO 63141
Phone: (314) 991-0255
Fax:  (314) 567-8019
edmo@km-law.com

I certify that a true copy of the Above Pleading was served either electronically or via first class mail on December 18, 2017, upon the following parties:

Linda M. Thake
Debtor
4058 Humphrey St.
Saint Louis, MO 63116

Ross H. Briggs
Attorney for Debtor
4144 Lindell Blvd, Suite 202
St. Louis, MO 63108

Diana S. Daugherty
Trustee
PO Box 430908
St. Louis, MO 63143

U.S. Trustee
Office of the US Trustee
111 S. 10th St., Ste. 6.353
St. Louis, MO 63102

/s/ Jessica Werner
    Jessica Werner



Exhibit 1

LOAN NUMBER: ███████████

# NOTE

10/04/07                    SAINT LOUIS                    MO
[Date]                          [City]                    [State]

4058 HUMPHREY ST, SAINT LOUIS, MO 63116

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    121,300.38    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.625    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on DECEMBER 01, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    NOVEMBER 01, 2037    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    776.70 .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.0   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**BS5N** (0101)

BS5R 10/02/07 1:46 PM

3

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF
WITHOUT RECOURSE
Bank of America, N.A.
BY _____
CHRISTINA M. SCHMITT
ASSISTANT VICE PRESIDENT

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
LYNDA MAYS                                  -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower
                                            *(Sign Original Only)*

BS5N (0101)                    Page 3 of 3

BS5R 10/02/07 1:45 PM

# OPTIONAL BORROWERS PROTECTION PLAN® ADDENDUM ("ADDENDUM")

Borrower(s):  LINDA MAYS

Account Number: ████████

Note or Request Date: _____OCTOBER 4TH, 2007_____ "Note Date" Principal Amount of Loan Agreement or Amount Advanced or Transferred under the Fixed Rate Loan Confirmation: $ _____121,300.38_____

## IMPORTANT INFORMATION ABOUT BANK OF AMERICA'S BORROWERS PROTECTION PLAN

**This Product is Optional.** Your purchase of Borrowers Protection Plan is optional. Whether or not you purchase Borrowers Protection Plan will not affect your application for credit or the terms of any existing credit agreement you have with Bank of America.

**Termination of Borrowers Protection Plan:** You have the right to cancel Borrowers Protection Plan at any time by making a written request. Bank of America has the right to cancel Borrowers Protection Plan upon sixty (60) days notice to you.

Borrowers Protection Plan will automatically terminate in the following circumstances:
1. Any monthly fee remaining unpaid ninety (90) days after its due date.
2. Your loan is charged off to profit and loss.
3. Your loan is paid off or refinanced.
4. Your loan and its servicing is transferred to an unaffiliated lender.
5. The expiration date (final scheduled payment due date) of your loan is reached, or 120 months of protection, whichever comes first.

**Amount of Fee:** The monthly Fee for the selected Borrowers Protection Plan option is $ _____N/A_____ . If you were to pay this monthly Fee for the duration of your loan term or the 120-month maximum term of Borrowers Protection Plan, whichever is less, the total Borrowers Protection Plan fee would be $ _____N/A_____ .

**Eligibility Requirements, Conditions and Exclusions:** There are eligibility requirements, conditions and exclusions that could prevent you from receiving benefits under Borrowers Protection Plan.

You may find a complete explanation of eligibility requirements, conditions and exclusions in the following portions of the Borrowers Protection Plan Addendum:
For Disability protection, refer to Section II; paragraph a, paragraph b, paragraph c and paragraph d.
For Unemployment protection, refer to Section III; paragraph a, paragraph b, paragraph c and paragraph d.
For Accidental Death protection, refer to Section IV; paragraph a, paragraph b, paragraph c and paragraph d.

The undersigned Borrowers acknowledge receipt of the above product disclosures.

_Linda M Mays_
LINDA MAYS

**Page 2 must also be completed and signed by all borrowers.**

| Initial Below for Option Selected | Selected Protection Option | Protection Options | Single or Joint | Benefit Period | Monthly Fee * | Monthly Fee as a Percentage of principal and interest | Monthly Payment (includes Fee)* | Total BPP Fee* |
|---|---|---|---|---|---|---|---|---|
| | ☐ 1 | Disability & Accidental Death | Single | 12 MOS | $ 36.83 | 5.000 % | $ 815.53 | $ 4,659.60 |
| | ☐ 2 | | Joint | 12 MOS | $ 62.13 | 8.000 % | $ 838.83 | $ 7,455.60 |
| | ☐ 3 | Involuntary Unemployment & Accidental Death | Single | 12 MOS | $ 42.71 | 5.500 % | $ 819.41 | $ 5,125.20 |
| | ☐ 4 | | Joint | 12 MOS | $ 77.57 | 10.000 % | $ 854.37 | $ 9,320.40 |
| | ☐ 5 | Disability, Involuntary Unemployment & Accidental Death | Single | 12 MOS | $ 69.90 | 9.000 % | $ 846.60 | $ 8,388.00 |
| | ☐ 6 | | Joint | 12 MOS | $ 116.50 | 15.000 % | $ 893.20 | $ 13,980.00 |
| | ☑ 0 | Decline Protection | | 12 MOS | .00 | .000 | .00 | .00 |

(Options 1 and 2, refer to sections I, II and IV for specific details pertaining to these options. Options 3 and 4, refer to sections I, III and IV for specific details pertaining to these options. Options 5 and 6, refer to sections I, II, III and IV for specific details pertaining to these options. If protection is declined, there is no amendment to the Note.)

The above Protection will be provided subject to the terms of this Addendum. Protection will expire on _____ . The Protection is optional and not required to obtain this loan or fixed rate option, and is not a factor in evaluating your application. Each Borrower has read and agreed to the terms of this Addendum.

*If the Note is for a variable or adjustable rate loan, the Monthly Fee and Monthly Payment shown above are based upon the initial monthly payment of principal and interest as shown on the Note, and both amounts are subject to change as described in the Note and this Addendum. The total fee for Protection is an estimate based upon the first 120 monthly payments of principal and interest as shown on your Note.

After reviewing the above information about Borrowers Protection Plan, having full opportunity to read the Addendum and ask questions, I/we make the following choice:

☐ I/We elect single Protection for the Borrower listed below (Applicable for options 1, 3 and 5 only).

_____

☐ I/We elect joint Protection for the two Borrowers listed below (Applicable for options 2, 4 or 6 only).

_____

[ X ] I/We decline to purchase any Protection on this loan. (Applicable to Option 0).

*Linda M Mays*
LINDA MAYS

_____

_____

_____

Investor Loan # _____ ████████████ ____

**After Recording Return To:**
Bank of America, N.A.
11802 Ridge Parkway, Ste 100 HRM
HOME RETENTION
Broomfield, CO 80021

This document was prepared by Bank of America, N.A.

_____**[Space Above This Line For Recording Data]**_____

## FANNIE MAE LOAN MODIFICATION AGREEMENT

Borrower ("I")[1]: LINDA M THAKE
Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and
Note ("Note"): 10/04/2007
Loan Number: ████████████
Property Address (See Exhibit A for Legal Description if applicable) "Property": 4058
HUMPHREY ST, SAINT LOUIS, MO 63116
See Exhibit B for assignments of record if applicable
If my representations and covenants in Section 1 continue to be true in all material
respects, then this Loan Modification Agreement ("Agreement") will, as set forth in
Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note
secured by the Mortgage. The Mortgage and Note together, as they may previously
have been amended, are referred to as the "Loan Documents." Capitalized terms used
in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the
Lender will send me a signed copy of this Agreement. This Agreement will not take
effect unless the preconditions set forth in Section 2 have been satisfied.

_____

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I".
For purposes of this document words signifying the singular (such as "I") shall include the plural
(such as "we") and vice versa where appropriate.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the FANNIE MAE Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.

I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on October 1, 2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on October 1, 2012.

A. The Maturity Date will be: September 1, 2052.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $117,323.44 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 4.625% will begin to accrue on the New Principal Balance as of September 1, 2012 and the first new monthly payment on the New Principal Balance will be due on October 1, 2012. The repayment terms of my modified loan are as follows:

Maturity Date: September 1, 2052
Interest Rate: 4.625%
New Principal Balance: $117,323.44
First Modified Payment Due Date: October 1, 2012
Number of Monthly Payments: 480
Monthly Principal and Interest Payment: $536.91
Estmated Monthly Escrow Payment: $272.56
Total Monthly Payment: $809.47

*The escrow payments may be adjusted periodically in accordance with the applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Fannie Mae Loan Modification Program.

L.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

O. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

P. BORROWERS PROTECTION PLAN If I have a Loan with Borrowers Protection Plan® ("BPP") under my Loan Documents, then I understand and agree that, unless I notify Lender of my request to cancel BPP or my BPP has already been cancelled or terminated in accordance with its terms, my BPP will remain on my Loan, as modified in accordance with this Agreement, and will continue to be governed by the terms of my Borrowers Protection Plan Addendum, which is the contract containing the terms and conditions of BPP that I received at closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1-866-554-2676. If I notify the Lender of my request to cancel BPP within sixty (60) days after the Modification Effective Date, I will receive a refund of any BPP fees I pay with respect to any period after the Modification Effective Date. I further understand that BPP on my Loan may have already been cancelled or terminated by its terms, such as if any monthly fee for BPP has remained unpaid 90 days after its due date.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers Protection Plan Addendum will be the monthly payment of principal and/or interest as modified under this Agreement. With the exception of BPP benefits based on the outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will be calculated based on this new Monthly Payment amount, subject to the terms of the Borrowers Protection Plan Addendum.

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount charged to me for BPP, will be recalculated based on the percentage set forth in my Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter, as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly payment of principal and/or interest as modified under this Agreement, may be higher if the monthly payment under my modified Loan is or becomes higher than the monthly payment that was due on my Loan prior to modification under this Agreement. The monthly fee for BPP will be payable at the same time and place as payments of principal and/or interest under my modified Loan. The "Protection Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP became effective, and the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP will automatically expire, will not be changed by this Agreement. I will refer to my Borrowers Protection Plan Addendum for complete terms and conditions of my BPP.

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1-866-317-5116.

Q.  OPTIONAL PRODUCTS PURCHASED AFTER CLOSING  I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents.  I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America by calling 800-641-5298.

R. In the event of default under this Agreement and/or the Loan Documents, I absolutely assign and transfer to Lender any and all rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. I unconditionally authorize Lender or Lender's agents to collect the Rents, and agree that each tenant of the Property shall pay the Rents to Lender or Lender's agents. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only. I further agree that all Rents collected by Lender or Lender's agents shall be applied first to any fees, charges, assessments or other costs associated with managing the Property and collecting the Rents. Any amounts collected that exceed the costs of managing the Property and collecting the Rents shall be applied to the outstanding indebtedness under the Loan Documents in the manner described in the Loan Documents. If the amounts collected are insufficient to cover the costs of managing the Property and collecting the Rents, any additional expenditure by Lender for such purpose shall become indebtedness secured by the Security Instrument as per the Loan Documents. This assignment of Rents of the Property shall terminate when the indebtedness secured by the Security Instrument is paid in full. Upon Lender's request after default, I shall assign to Lender any lease and/or sublease (collectively "Lease") of the Property and all security deposits made in connection with any Lease of the Property.

Upon the assignment, Lender shall have the right to modify, renew, extend or terminate any Lease, in its sole discretion. I represent and warrant that I have not executed any prior assignment of Lease or the Rents, and have not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph or the Loan Documents.

S. I agree that if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, accelerate the debt and require immediate payment of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Agreement. If Lender exercises this option, Lender shall give notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed to pay all sums secured by the Security Instrument. Unless these sums are paid prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand.

In Witness Whereof, the Lender and I have executed this Agreement.

*Linda M Thake*

LINDA M THAKE

9/28/12

Date

**DO NOT WRITE BELOW THIS LINE.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
      By: Urban Settlement Services, LLC, its attorney in fact

      By: _____    Dated: **MAY 0 2 2013**

      Name: **Lynn Holdsworth**
      Title : **ASSISTANT SECRETARY**

Exhibit 2

BOOK                    PAGE
12032007-0350

RECORDER OF DEEDS
CITY OF ST. LOUIS
RECORDED-CERTIFIED ON
12/03/2007      03:38PM

SHARON QUIGLEY CARPENTER
RECORDER OF DEEDS

PAGES:  18
AMOUNT DUE:  $108.00
Clerk:
1838103940000  495584

———————— [Space Above this Line for Recording Data] ————————

Title(s) of Document:   "DEED OF TRUST"

Date of Document:   OCTOBER 04, 2007

Grantor(s):   LINDA MAYS, A MARRIED PERSON, WITH THE ASSENT OF HER SPOUSE, COSELLE L. MAYS, AS TO THIS CONVEYANCE WITHOUT HER JOINDER ASSENT TO EXECUTION RECORDED IN THE ST LOUIS CITY RECORDERS OFFICE ON 9/30/2005 IN BOOK 9302005 PAGE 185.

Grantor's Address:   4058 HUMPHREY ST, SAINT LOUIS, MO  63116

Grantee(s):   BANK OF AMERICA, N.A.

Grantee's Address:  9000 SOUTHSIDE BLVD JACKSONVILLE, FL 322560000

Full Legal Description is located on page:   ~~THREE~~  Exhibit A

Reference Book(s) and Page(s), if required:

**MO Indexing Coversheet − 11/01**
*VMP* −368C(MO) (0111)

VMP MORTGAGE FORMS - (800)521-7291

M068 10/02/07 1:45 PM

Return To:

MAYS, LINDA

**Record and Return To:**
**United General Title Ins**
**Fiserv — P.O. BOX 2590**
**Chicago, IL 60690**

Lender address located on page 2
Trustee address located on page 2
Full Legal Description located on page THREE

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

LOAN #

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated OCTOBER 04, 2007 , together with all Riders to this document.

**(B) "Borrower"** is LINDA MAYS, A MARRIED PERSON, WITH THE ASSENT OF HER SPOUSE, COSELLE L. MAYS, AS TO THIS CONVEYANCE WITHOUT HER JOINDER ASSENT TO EXECUTION RECORDED IN THE ST LOUIS CITY RECORDERS OFFICE ON 9/30/2005 IN BOOK 9302005 PAGE 185.

whose address is 4058 HUMPHREY ST, SAINT LOUIS, MO 63116

Borrower is the trustor under this Security Instrument.

**MISSOURI** — Single Family — **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-6(MO) (0107)

Page 1 of 16

VMP MORTGAGE FORMS - (800)521-7291

Form 3026 1/01

Initials:

CVMO 10/02/07 1:45 PM



**(C) "Lender"** is BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA
Lender's address is 9000 SOUTHSIDE BLVD, JACKSONVILLE, FL 322560000

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is  PRLAP, INC.

Trustee's address is C/O 1400 BEST PLAZA DRIVE RICHMOND VA. 23227

**(E) "Note"** means the promissory note signed by Borrower and dated  OCTOBER 04, 2007
The Note states that Borrower owes Lender ONE HUNDRED TWENTY ONE THOUSAND THREE
HUNDRED AND 38/100                                                        Dollars
(U.S. $        121,300.38   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than       NOVEMBER 01, 2037
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _JM_

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the COUNTY of ST. LOUIS CITY

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
"SEE ATTACHED EXHIBIT A."

Parcel ID Number: 41500000400                               which currently has the address of
4058 HUMPHREY ST                                                                      [Street]
SAINT LOUIS                                          [City] , Missouri 63116          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _LM_

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _JM_

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Initials: _LM_

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and

Initials: _____

Form 3026 1/01

-6(MO) (0107)
CVMO 10/02/07 1:45 PM

Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair

market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If

Initials: 

Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum

Initials: 

products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public

advertisement for the time and in the manner prescribed by Applicable Law . Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**26. Homestead Exemption.** Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

**27. Notice.** Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive-statement of the agreement between us, except as we may later agree in writing to modify it.

Initials: 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Donna Schaefer_

_Linda M Mays_ (Seal)
LINDA MAYS                     -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower

**STATE OF MISSOURI,** St Louis City **County ss:**

On this 4th day of Oct, 2007 , before me personally appeared

Linda Mays

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the and State aforesaid, the day and year first above written.

My Term Expires:

_____
Notary Public

LISA D. GARVIN
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis City County
My Commission Expires: July 09, 2010
06910592

—6(MO)(0107)

CVMO 10/02/07 1:45 PM

Page 16 of 16

Initials:

**Form 3026 1/01**

# EXHIBIT "A"

THE FOLLOWING DESCRIBED LOTS, TRACTS, OR PARCELS OF LAND, LYING, BEING AND SITUATE IN THE COUNTY OF ST. LOUIS CITY, AND STATE OF MISSOURI, TO WIT:

THE EASTERN 10 FEET OF LOT 16 AND THE WESTERN 20 FEET OF LOT 17 OF RUSSELL PLACE AND IN BLOCK 4150 OF THE CITY OF ST. LOUIS, TOGETHER FRONTING 30 FEET ON THE SOUTH LINE OF HUMPHREY STREET BY A DEPTH SOUTHWARDLY OF 124 FEET 4 1/2 INCHES TO A 15 FOOT WIDE ALLEY.

Being that parcel of land conveyed to Linda Mays, a married person, from Linda Thake, nka Linda Mays, and Coselle Mays, husband and wife, acting individually and pursuant to Waiver of Marital Rights/Assent as to Execution of Deed, by that deed dated 08/25/2005 and recorded 09/30/2005 in Deed Book 9302005, at Page 185 of the St. Louis City, MO Public Registry.

Tax Map Reference: 41500000400

Comments:   Scrivener's Error Affidavit, recorded 11/15/2005, at Book 11152005, Page 195 to correct the Block number in the legal description, as it appears in the Warranty Deed recorded 05/13/2005, Quit-Claim Deed recorded 09/30/2005, two Deeds of Trust recorded 09/30/2005, and Marital Waiver recorded 09/30/2005.

END OF DOCUMENT PAGES 1 THROUGH 18 BM

Exhibit 3



8 2 0 7 9 4 9
Tx:4570188

**BOOK        PAGE**
**09302013-0096**

RECORDER OF DEEDS
CITY OF ST. LOUIS
RECORDED-CERTIFIED ON
09/30/2013 12:17 PM

SHARON QUIGLEY CARPENTER
RECORDER OF DEEDS

PAGES: 2
AMOUNT DUE: 28.00
4570188

This space for Recorder's use

Recording Requested By:
**Bank of America**
Prepared By:
**Hambeik Sepani**
**800-444-4302**
**101 S. Marengo Ave.**
**Pasadena, CA 91101**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

Property Address:
**4058 Humphrey St**
**Saint Louis, MO 63116-3823**
9/5/2013

# ASSIGNMENT OF MORTGAGE/DEED OF TRUST

For Value Received on this date, SEP 12 2013           , Bank of America, N.A., the undersigned holder of a Mortgage/Deed of Trust (herein "Grantor") whose address is **1800 TAPO CANYON RD., SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** (herein "Grantee") whose address is **14221 DALLAS PARKWAY, STE 1000, DALLAS TX 75254** all beneficial interest under that certain Mortgage/Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage/Deed of Trust.

Original Grantor:     **BANK OF AMERICA, N.A.**

Borrower(s):          **LINDA MAYS, A MARRIED PERSON, WITH THE ASSENT OF HER SPOUSE, COSELLE L. MAYS, AS TO THIS CONVEYANCE WITHOUT HER JOINDER ASSENT TO EXECUTION RECORDED IN THE ST LOUIS CITY RECORDERS OFFICE ON 9/30/2005 IN BOOK 9302005 PAGE 185**

Date of Mortgage/Deed of Trust:   **10/4/2007**         Loan Amount:    **$121,300.38**

Recorded in **SAINT LOUIS CITY County**, MO on: 12/3/2007, book 12032007, page 0350 and instrument number N/A

Property Legal Description:
**THE FOLLOWING DESCRIBED LOTS, TRACTS, OR PARCELS OF LAND, LYING, BEING AND SITUATE IN THE COUNTY OF ST. LOUIS, IN STATE OF MISSOURI, TO WIT:  THE EASTERN 10 FEET OF LOT 16 AND THE WESTERN 20 FEET OF LOT 17 OF RUSSELL PLACE AND IN BLOCK 4150 OF THE CITY OF ST. LOUIS, TOGETHER FRONTING 30 FEET ON THE SOUTH LINE OF HUMPHREY STREET BY A DEPTH SOUTHWARDLY OF 124 FEET 4 1/2 INCHES TO A 15 FOOT WIDE ALLEY.  BEING THAT PARCEL OF LAND CONVEYED TO LINDA MAYS, A MARRIED PERSON, FROM LINDA THAKE, NKA LINDA MAYS, AND COSELLE MAYS, HUSBAND AND WIFE, ACTING INDIVIDUALLY AND PURSUANT TO WAIVER OF MARITAL RIGHTS/ASSENT AS TO EXECUTION OF DEED, BY THAT DEED DATED 08/25/2005 AND RECORDED 09/30/2005 IN DEED BOOK 9302005, AT PAGE 185 OF THE ST. LOUIS CITY, MO PUBLIC REGISTRY.  TAX MAP REFERENCE: 41500000400**

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone # 1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage/Deed of Trust to be executed on
SEP 1 2 2013

Bank of America, N.A.

By: _____ _m̲s̲_____

_____Nancy Scothorn_____,
Assistant Vice President

State of **California**
County of **Los Angeles**

On __SEP 1 2 2013__ before me, _____**Martine F.S. Henry**_____, Notary Public, personally appeared
_____Nancy Scothorn_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

MARTINE F.S. HENRY
Commission # 1917150
Notary Public - California
Los Angeles County
My Comm. Expires Jan 12, 2015

Notary Public: _____**Martine F.S. Henry**_____    (Seal)
My Commission Expires: _____Jan. 12, 2015_____

**BOOK       PAGE**
**06142017-0124**

**RECORDER OF DEEDS**
**CITY OF ST. LOUIS**
**RECORDED-CERTIFIED ON**
**06/14/2017 12:16 PM**

**SHARON QUIGLEY-CARPENTER**
**RECORDER OF DEEDS**

**PAGES: 3**
**AMOUNT DUE: 33.00**
**4904330**
**THIS DOCUMENT WAS eRECORDED**

FNMA Loan Number
Seterus Loan Number
BSI Loan Number

# ASSIGNMENT OF MORTGAGE/DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, (GRANTOR) **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described mortgage/deed of trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to (GRANTEE) **US BANK TRUST N.A., AS TRUSTEE OF BUNGALOW SERIES F TRUST, WHOSE ADDRESS IS, 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, AZ 85251 (602)802-8305, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Said Mortgage/Deed of Trust dated 10/04/2007, executed by **LINDA MAYS** to **BANK OF AMERICA, N.A.** and recorded in the Recorder's Office of <u>**ST. LOUIS CITY**</u> County, <u>**Missouri**</u>, in <u>**Book 12032007 and Page 350**</u>, on the property as described in said Mortgage/Deed of Trust, to wit:

    Legal Description: SEE ATTACHED EXHIBIT A

Property is commonly known as: 4058 HUMPHREY ST, SAINT LOUIS, MO 63116.

This Assignment was executed **this 14th day of June in the year 2017.**

FNMA Loan Number
Seterus Loan Number
BSI Loan Number

Dated this 14th day of June in the year 2017.
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact**



JENNIFER MOYLAN
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA      COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 14th day of June in the year 2017, by Jennifer Moylan as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

MICHELLE BROWN
COMM EXPIRES: 10/13/2020

MICHELLE BROWN
Notary Public - State of Florida
My Commission #GG 38514
Expires October 13,2020

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: Fannie Mae, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683

# Exhibit A

THE FOLLOWING DESCRIBED LOTS, TRACTS, OR PARCELS OF LAND, LYING, BEING AND SITUATE IN THE COUNTY OF ST. LOUIS CITY, AND STATE OF MISSOURI, TO WIT:

THE EASTERN 10 FEET OF LOT 16 AND THE WESTERN 20 FEET OF LOT 17 OF RUSSELL PLACE AND IN BLOCK 4150 OF THE CITY OF ST. LOUIS, TOGETHER FRONTING 30 FEET ON THE SOUTH LINE OF HUMPHREY STREET BY A DEPTH SOUTHWARDLY OF 124 FEET 4 1/2 INCHES TO A 15 FOOT WIDE ALLEY.

Being that parcel of land conveyed to Linda Mays, a married person, from Linda Thake, nka Linda Mays, and Coselle Mays, husband and wife, acting individually and pursuant to Waiver of Marital Rights/Assent as to Execution of Deed, by that deed dated 08/25/2005 and recorded 09/30/2005 in Deed Book 9302005, at Page 185 of the St. Louis City, MO Public Registry.

## Post Petition Pay History
## Exhibit 4

| Payment Due Date | Amount Due | Date Funds Received | Amount Received | Date Funds Applied | Total Amount Applied | Suspense |
|---|---|---|---|---|---|---|
| | | 10/06/15 | $59.93 | | | $59.93 |
| | | 10/15/15 | $72.16 | | | $132.09 |
| 11/01/15 | $810.40 | 11/05/15 | $810.40 | 11/01/15 | $810.40 | $132.09 |
| 12/01/15 | $810.40 | 01/04/16 | $810.40 | 12/01/15 | $810.40 | $132.09 |
| 01/01/16 | $810.40 | 02/29/16 | $810.40 | 01/01/16 | $810.40 | $132.09 |
| 02/01/16 | $810.40 | 06/29/16 | $810.40 | 02/01/16 | $810.40 | $132.09 |
| 02/01/16 | | 07/05/16 | -$810.40 | 07/05/16 | -$810.40 | $132.09 |
| 02/01/16 | $810.40 | | | | | $132.09 |
| 03/01/16 | $810.40 | | | | | $132.09 |
| 04/01/16 | $810.40 | | | | | $132.09 |
| 05/01/16 | $810.40 | | | | | $132.09 |
| 06/01/16 | $810.40 | | | | | $132.09 |
| 07/01/16 | $810.40 | | | | | $132.09 |
| 08/01/16 | $810.40 | | | | | $132.09 |
| 09/01/16 | $813.18 | | | | | $132.09 |
| 10/01/16 | $813.18 | | | | | $132.09 |
| 11/01/16 | $813.18 | | | | | $132.09 |
| 12/01/16 | $813.18 | | | | | $132.09 |
| 01/01/17 | $813.18 | | | | | $132.09 |
| 02/01/17 | $813.18 | | | | | $132.09 |
| 03/01/17 | $813.18 | | | | | $132.09 |
| 04/01/17 | $813.18 | | | | | $132.09 |
| 05/01/17 | $813.18 | | | | | $132.09 |
| 06/01/17 | $786.21 | | | | | $132.09 |
| 07/01/17 | $786.21 | | | | | $132.09 |
| 08/01/17 | $786.21 | | | | | $132.09 |
| 09/01/17 | $786.21 | | | | | $132.09 |
| 10/01/17 | $786.21 | | | | | $132.09 |
| 11/01/17 | $786.21 | | | | | $132.09 |
| 12/01/17 | $786.21 | | | | | $132.09 |
| | | | | | | |
| Totals | $21,736.49 | | $2,563.29 | | $2,431.20 | $132.09 |

B6A (Official Form 6A) (12/07)

.

In re    **Linda M. Thake**                                                  ,          Case No. _____
_____
                                    Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **4058 Humphrey St. St. Louis,  MO 63116** | **Fee simple** | - | **75,000.00** | **120,000.00** |

| | Sub-Total > | **75,000.00** | (Total of this page) |
|---|---|---|---|
| | Total > | **75,000.00** | |

__0__    continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                                                                        Best Case Bankruptcy